1
2
3
4
5
6
7
8
9

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14
15
16
17

FIDELITY NATIONAL FINANCIAL, INC., a Delaware corporation, and FIDELITY NATIONAL INFORMATION SOLUTIONS, INC., a Delaware corporation,

        Plaintiffs,

  v.

T. MICHAEL OUSLEY and MARY OUSLEY, as Co-Trustees of THE OUSLEY FAMILY TRUST,

        Defendants.
                                /

No. C 06-1251 CRB

**MEMORANDUM AND ORDER**

18
19
20
21
22

This declaratory judgment action arises out of a corporate acquisition.  Defendants now move the Court to dismiss the action for lack of subject matter jurisdiction, or in the alternative to dismiss or stay the proceedings.  After carefully considering the papers filed by the parties, the Court concludes that oral argument is unnecessary, <u>see</u> Local Rule 7-1(b), and declines to exercise jurisdiction and dismisses this action without prejudice.

23

**BACKGROUND**

24

**I.     The Underlying Transaction**

25
26
27
28

Fidelity National Financial ("FNF") is a Delaware corporation with its principal place of business in Jacksonville, Florida.  Fidelity National Information Solutions ("FNIS") is a Delaware corporation with its principal place of business in Jacksonville, Florida.  FNF owns 100 percent of FNIS today, but, at the time of the disputed transaction in March-April 2003,

**United States District Court**

For the Northern District of California

FNF owned 66 percent of FNIS shares.

Defendants T. Michael Ousley and Mary Ousley are residents of California and serve as co-trustees of the Ousley Family Trust, a trust established under the laws of the State of California.

In March 2003, Bickett and Suh, officers of FNF and agents of FNIS, negotiated a deal to purchase 100 percent of the shares of Ousley, Inc., dba Appraisal Enhancement Services ("AES"), for $6.5 million in cash plus a number of shares of FNIS to be determined by a formula. AES was then wholly owned by the Ousley Family Trust. A letter of intent memorialized this agreement, and the deal was scheduled to close on April 1, 2003.

Days before the closing, Bickett and Suh contacted T. Michael Ousley to suggest the Ousleys accept $13 million in cash instead of the planned price of $6.5 million plus shares of FNIS. Defendants claim Bickett stated that the purpose of the change was to reduce the complexity of the transaction. Bickett also allegedly indicated the change would be better for the Ousleys since the stock could go down in value. Defendants allege Bickett and Suh knew FNF intended to purchase the outstanding minority shares of FNIS at a premium and that the FNIS shares previously offered had a substantially greater value than the $6.5 million in replacement cash. The Ousleys agreed to the purchase of AES for $13 million in cash on April 15, 2003. Around May 2003, FNF announced its acquisition of the minority shares of FNIS.

On January 31, 2006, counsel for the Ousley Family Trust sent a demand letter to FNF and FNIS alleging that the Trust was damaged in connection with FNIS's acquisition of AES and offered to settle the dispute for $9,850,769.30. This amount represents the difference in value between the $6.5 million in cash accepted and the present value of the FNIS shares originally offered, plus the tax consequences of changes to the deal made by FNF and FNIS. The demand letter held the offer open until February 20, 2006. FNF and FNIS did not respond to the demand letter.

//

//

2

**United States District Court**

For the Northern District of California

1  **II.    The Federal Action**

2      On February 21, 2006, the day after the Ousley's offer expired, FNF and FNIS filed

3  this action for a declaratory judgment.  Bickett and Suh are not listed as plaintiffs.

4  Complaint.  Suh is no longer employed by FNF, and Bickett is currently President of FNF.

5      Waiver of service was executed by both Ousley defendants on March 18, 2006.

6  **III.    The State Court Action**

7      On May 1, 2006, T. Michael Ousley and Mary Ousley, as co-trustees of the Ousley

8  Family Trust, sued FNF, FNIS, Bickett and Suh in state court for 1) intentional

9  misrepresentation/concealment, 2) negligent misrepresentation/concealment, 3) rescission, 4)

10 constructive trust, and 5) unjust enrichment.  In the state court complaint, the Ousley

11 plaintiffs claim Bickett and Suh acted within the course and scope of such agency and

12 employment and with the permission and consent of FNF in fraudulently inducing the

13 Ousleys to accept all cash in the AES transaction in 2003.  Plaintiffs allege Bickett made the

14 misleading statements about the reasons for the change to a cash price and the likely

15 depreciation of FNIS stock, and Suh "participated on that call and did not correct Bickett's

16 false and misleading statements."

17 **IV.    The Present Motion in the Federal Court Action**

18     The Ousley defendants now move to dismiss for lack of subject matter jurisdiction,

19 claiming there is not complete diversity of citizenship because Suh, named as a defendant in

20 the demand letter and in the state court action, is a party in interest in the federal action but is

21 not named as a plaintiff.  Defendants also move to dismiss the federal court action, or in the

22 alternative to stay, under Brillhart, in favor of the state court action filed eight days before

23 this motion.

24                  **DISCUSSION**

25 **I.    The Motion to Dismiss for Lack of Subject Matter Jurisdiction**

26     Defendants assert that plaintiffs chose to exclude Suh, who is "a party interest in this

27 case as a plaintiff," because his citizenship would defeat diversity.  At present there is

28 complete diversity because FNF and FNIS are Delaware corporations with their principal

3

places of business in Florida, and the Ousley defendants are California residents.  Defendants

assert that, as a result of the omission of Suh as a plaintiff, this Court lacks subject matter

jurisdiction, but defendants fail to explain how the omission defeats diversity.  Without more,

defendants' motion must be denied because the conclusion is unsupported by relevant

analysis or legal authority.

**II.     The Court's Discretionary Authority Under <u>Brillhart</u>**

**A.     Legal Standard for a Motion to Dismiss or Stay Under <u>Brillhart</u>**

Defendants also ask the Court to dismiss or stay this action in favor of the state court

suit filed after this suit.  District courts have "unique and substantial" discretion in

determining whether to entertain declaratory relief actions under the Declaratory Judgment

Act, 28 U.S.C. § 2201(a).  <u>Wilton v. Seven Falls Co.</u>, 515 U.S. 277, 286 (1995).  "Of course,

this discretion is not unfettered."  <u>Government Employees Insurance Company v. Dizol</u>, 133

F.3d 1220, 1223 (9th Cir. 1998).  "Prudential guidance for retention of the district court's

authority is found in <u>Brillhart v. Excess Ins. Co. of America</u>, 316 U.S. 491 (1942), and its

progeny."  <u>Id.</u>

"The <u>Brillhart</u> factors remain the philosophic touchstone for the district court."  <u>Id.</u> at

1225.  The primary factors to consider are: avoiding needless determination of state law

issues, discouraging litigants from filing declaratory actions as a means of forum shopping;

avoiding duplicative litigation.  <u>Id.</u>

**B.     Application of the <u>Brillhart</u> Factors to This Case**

**i.     Needless Decision of State Law**

A "needless decision of state law" may involve: an ongoing parallel state proceeding

regarding the "precise state law issue," an area of law Congress expressly left to the states, or

a lawsuit with no compelling federal interest (for instance, when a case is solely based on

diversity).  <u>Continental Casualty Co. v. Robsac Indus.</u>, 947 F.2d 1367, 1371-72 (9th Cir.

1991) (overruled in part on other grounds by <u>Dizol</u>).  "However, there is no presumption in

favor of abstention in declaratory actions generally, nor in insurance cases specifically.  <u>Dizol</u>

//

1  133 F.3d at 1226.  The district court is in the "best position to assess how judicial economy,

2  comity and federalism are affected in a given case."  Id. at 1226.

3      There is an ongoing parallel state court proceeding involving the "precise state law

4  issues" and facts before this Court.  The parties in this action are all parties to the state court

5  proceeding that also names Bickett and Suh as plaintiffs, who defendants claim were directly

6  responsible for the misleading statements and who are not parties before this Court.

7  Adjudication of this case in federal court, while a parallel state court action involving

8  precisely the same state law issues and same parties is pending, invites a needless decision of

9  state law.

10      Moreover, there is no compelling federal interest because jurisdiction is based on

11  diversity of citizenship.  Defendants claim that federal law questions based on securities law

12  are implicated as a potential defense to the fraud and misrepresentation claims.  This

13  potential federal question is not raised in the complaint, and, even if relevant to the

14  declaratory relief sought, is not a vital element of the defendants' purely state law claims.

15      In sum, a needless decision of state law is best avoided by this Court declining

16  jurisdiction of this declaratory judgment action.

17          **ii.    Forum Shopping**

18      The second Brillhart factor is the interest in avoiding the use of declaratory judgment

19  actions as a means of forum shopping, particularly in reactive or defensive declaratory

20  actions.  Robsac, 947 F.2d at 1371.

21      Defendants claim this declaratory judgment action was motivated by forum shopping

22  because it was anticipatory: after receiving the demand letter, the plaintiffs raced to the

23  courthouse, filing suit the date after their response to the demand letter was due.  Indeed, for

24  this Court to have jurisdiction of this declaratory judgment action, at the time plaintiffs filed

25  suit there had to have been an "actual case or controversy" between the parties, that is, "a

26  substantial controversy, between parties having adverse legal interests, of sufficient

27  immediacy and reality to warrant the issuance of a declaratory judgment."  Societe de

28

United States District Court

For the Northern District of California

1   Conditionnement en Aluminium v. Hunter Engineering Co., Inc., 655 F.2d 938, 943 (9th Cir.

2   1981) (citing Maryland Casualty Co. v. Pacific Coal & Oil Co., 312 U.S. 270, 273 (1941).

3         "The Declaratory Judgment Act was designed to relieve potential defendants from the

4   Damoclean threat of impending litigation which a harassing adversary might brandish, while

5   initiating suit at his leisure or never.  The Act permits parties so situated to forestall the

6   accrual of potential damages by suing for a declaratory judgment, once the adverse positions

7   have crystallized and the conflict of interests is real and immediate."  Id. (citing Japan Gas

8   Lighter Assoc. v. Ronson Corp., 257 F. Supp. 219, 237 (D.N.J. 1966)).[1]  "The apprehension

9   must have been caused by the defendant's actions."  Hal Roach Studios, Inc. v. Richard

10  Feiner and Co., Inc., 896 F.2d 1542, 1556 (9th Cir. 1990).

11        The only possible basis for such a "substantial controversy" is the demand letter; thus,

12  this lawsuit was filed in direct reaction to the letter and is therefore a "reactive" declaratory

13  judgment suit, even though it was filed before the state court lawsuit.  If, on the other hand,

14  the demand letter did not create a sufficient "case or controversy," then this Court did not

15  have jurisdiction until the state court lawsuit was filed.  The lawsuit is also "defensive" under

16  this scenario and should be treated as the second filed.

17                  **a.        There was no "case or controversy."**

18        In any event, the facts suggest that there was no case or controversy when the lawsuit

19  was filed.  The demand letter notified FNF and FNIS that the Ousley Trust retained counsel

20  "to seek redress for the fraud" committed by "defendants" FNF, FNIS, Bickett, and Suh

21  related to the AES acquisition.  After stating the elements of the misrepresentation claims

22

23        [1]Plaintiffs cite the broader "reasonable apprehension of suit" standard from Societe for
    patent infringement actions: "An action for a declaratory judgment that a patent is invalid, or that
24  the plaintiff is not infringing, is a case or controversy if the plaintiff has a real and reasonable
    apprehension that he will be subject to liability if he continues to manufacture his product."
25  Societe, 655 F.2d at 943-44.  In this analysis, a threat of litigation is not necessary but "becomes
    part of the picture in determining whether real and reasonable apprehension has been
26  demonstrated."  Id. at 945.  This standard is generally applied to intellectual property suits in the
    Ninth Circuit, with the narrower "substantial controversy" standard applied to other types of
27  suits.  See e.g., Pacific Bell Internet Services v. Recording Industry Association of America,
    Inc., et al., No. C03-3560, 2003 WL 22862662, at *4-5 (N.D. Cal. Nov. 26, 2003) (Illston, J.);
28  Bank of America, N.A. v. Miller, No. S-05-780, 2005 WL 2086099, at *3  (E.D. Cal. Aug. 25,
    2003).

United States District Court

For the Northern District of California

and alleging constructive trust and unjust enrichment, the letter offered to settle the matter for $ 9,850,769.30, an amount "in full satisfaction of claims by Trust against Defendants." Plaintiffs did not respond to the letter but, one day after a response was due, filed this action seeking a vague and unusual declaration that the Ousley Trust "received what it bargained for and has no claim for damages against FNF and FNIS."

Under either the "substantial controversy" standard or the broader "reasonable apprehension of suit" standard, a single demand letter making no threat of legal action and receiving no response is insufficient to create an actual controversy. Courts conduct a factual inquiry into the totality of the circumstances to determine if an actual case or controversy existed at the time the declaratory judgment action was filed. For instance, a letter that did not threaten litigation but issued an ultimatum threatening to disrupt entirely the business activities of the plaintiff was "enough to create a reasonable apprehension." Freecyclesunnyvale v. Freecycle Network, Inc., No. 06-00324, 2006 WL 870688, *4 (N.D. Cal. Apr. 4, 2006). In contrast, multiple notice letters outlining the dispute and potential legal action against plaintiff's subscribers, but not an intent to sue plaintiff, were insufficient to form an actual controversy. Pacific Bell, 2003 WL 22862662, *4. "Simply put, one cease and desist letter does not a case or controversy make where, as here, that letter invites negotiation, but does not directly threaten litigation, and was the sole act directed at plaintiff. [...] More is required." Dunn Computer Corp. v. Loudcloud, Inc., 133 F.Supp. 2.d 823, 827 (E.D. Vir. 2001).

The demand letter here did not threaten or even mention legal action, and it did not issue an ultimatum or threaten to disrupt the business activities of plaintiffs. This case is most similar to Dunn, in which the "meager facts" of a single cease and desist letter stating potential claims, but not with no litigation threats, "falls short of the constitutional case or controversy standard." Dunn, 133 F.Supp. 2d at 827. The plaintiff in Dunn also did not respond to the letter but, within eight days of receiving the cease and desist letter, filed a declaratory judgment action. Id. at 825-26. Here, the notable lack of any response from the plaintiffs prior to filing this action also suggests that "adverse positions" had not

1  "crystallized" in advance of this lawsuit.  Granted, the letter employed legal terminology and

2  demanded a significant sum of money, but, overall, the language of the demand letter did not

3  create, without more, a "Damoclean threat of litigation."  Moreover, one demand letter over

4  three years hardly indicates a "harassing adversary."

5        In sum, the circumstances do not demonstrate that a "substantial controversy" of

6  "sufficient immediacy and reality" existed at the time plaintiffs filed this declaratory

7  judgment action.  As a result, this Court did not have subject matter jurisdiction over this suit

8  until an actual case or controversy developed when defendants filed the state court action for

9  fraud and misrepresentation.  Therefore, the federal court action should be considered the

10  second-filed suit.

11                 **b.**      **If there was a case or controversy, plaintiffs were still forum**

12                      **shopping.**

13        On the other hand, if the demand letter was sufficient to create an actual case or

14  controversy, then the Court finds that this lawsuit was filed for the purpose of forum

15  shopping.

16        Plaintiffs argue that the demand letter was sufficient to create a "reasonable

17  apprehension of suit" to give rise to an actual case or controversy, but not so immediate as to

18  make their lawsuit forum shopping for purposes of the Brillhart factors.  See M.D. Beauty,

19  Inc. v. Gross, No. C03-3082, 2003 WL 24056263, at *3 (N.D. Cal. Oct. 27, 2003) (finding

20  that there was reasonable apprehension of suit sufficient to create an actual case or

21  controversy, but that the lawsuit was not "anticipatory" and therefore the first-to-file rule

22  applied).  Such a fine line cannot be drawn in this case.

23        Instead of responding to the demand letter or contacting defendants, plaintiffs filed

24  this declaratory judgment action in federal court one day after the response period cited in the

25  letter expired.  Plaintiffs were aware from the demand letter that defendants' claims, if the

26  basis for any future legal action, would preclude federal subject matter jurisdiction because

27  the claims were based on state law and referenced non-diverse parties.

28  //

**United States District Court**

For the Northern District of California

1    These circumstances indicate plaintiffs filed this declaratory judgment action in an

2    attempt to forum shop into federal court.  It would be inequitable to reward plaintiffs' forum

3    shopping by according preferential first-filed status to an action filed prematurely for the

4    purpose of securing the otherwise unavailable federal forum.

5                              **iii.        Duplicative Litigation**

6         The third <u>Brillhart</u> factor seeks to avoid duplicative litigation.  "If there are parallel

7    state court proceedings involving the same issues and parties pending at the time the federal

8    declaratory action is filed, there is a presumption that the entire suit should be heard in state

9    court." <u>Dizol</u>, 133 F.3d at 1225.  "Ordinarily it would be uneconomical as well as vexatious

10   for a federal court to proceed in a declaratory judgment suit where another suit is pending in

11   a state court presenting the same issues, not governed by federal law, between the same

12   parties." <u>Brillhart</u>, 316 U.S. at 495.  However, the pendency of a state court action does not

13   require a district court to refuse federal declaratory relief, but the federal courts should

14   generally decline to entertain reactive declaratory actions.  <u>Dizol</u>, 133 F.3d at 1225.

15        The facts underlying this action are exactly the same as those underlying the state

16   court action.  Furthermore, all parties relevant to the alleged fraud and misrepresentation are

17   present in the state action, including Suh and Bickett.  As a result, the application of the third

18   <u>Brillhart</u> factor supports the finding that the entire suit should be heard in state court to avoid

19   duplicative litigation.

20                                    **CONCLUSION**

21        The motion to dismiss for lack of subject matter jurisdiction is denied because there is

22   complete diversity between the parties at present and defendants have not shown how

23   diversity would be defeated.

24        For the reasons set forth above, however, it is not appropriate for the Court to decide

25   plaintiffs' state law claims for declaratory relief.  The Court finds that plaintiffs filed

26   prematurely for the purpose of forum shopping.  Accordingly, this action is DISMISSED

27   //

28   //

9

without prejudice.

**IT IS SO ORDERED.**

Dated: July 21, 2006

                             CHARLES  R. BREYER
                             UNITED STATES DISTRICT JUDGE

**United States District Court**

For the Northern District of California